Hear ye, hear ye. This Honorable Appellate Court for the 2nd District is now open. The Honorable Justice Catherine E. Zinoff presiding, along with Justice Mary S. Jostik and Justice Donald C. Hudson. The case is Numbers 219-1145 and 220-0221, consolidated. Anthony J. Trotto, Plaintiff, Appellee, and Appellant, versus City of Wood Dale et al., Defendants, Appellants, and Appellees. Arguing for the City, Sean Conway. Arguing for Mr. Trotto, Bernard K. Weiler. Thank you. Mr. Conway, are you ready to proceed? Yes, Your Honor. Thank you. You may go ahead. Good afternoon. Sean Conway on behalf of the Defendant, the City of Wood Dale. This case involves the administrative review of the City's administrative decision finding plaintiff liable for a violation of the City's zoning code. Before I get into the merits of this, I do want to make some remarks about the standard of review because it's our view that the standard of review in this case, which is an administrative review standard, is dispositive of this matter. So we know this court on administrative review reviews the decision of the administrative agency, not the decision of the trial court. We know that this court does not reweigh the competing evidence in the record. We know that this court does not substitute its judgment on the competing evidence in the record. And significantly, according to the Cedar Rock case we cited in the papers, if there is any evidence in the record that supports the administrative decision, the decision must be affirmed. And here, as to all of the issues raised by plaintiffs, there is evidence in the record supporting the administrative decisions. So I just want to turn to the violation at issue. The plaintiff's property is located in the Town Center Business District in the City of Wooddale. The Town Center Business District is primarily dedicated to commercial uses, business uses, retail uses. It's located on the Irving Park corridor in the city, which is the main corridor dedicated to the city's business and commercial establishments. Residential use of property is allowed in the Town Center Business District so long as the property owner seeks and obtains a special use permit, which is ultimately granted by the City Council. It is undisputed that a plaintiff is using his property, which is located in the TCB District, for residential uses. It's undisputed that a plaintiff has not obtained a special use permit and has never sought a special use permit. So that's undisputed. That's in the stipulations. So from a bare bones perspective, the violation itself is supported in the record. At the administrative hearing, plaintiffs raised a number of affirmative defenses, which the plaintiff argued excuses plaintiffs from the special use permit requirement. The primary argument that plaintiff raised was that plaintiff's property is legal non-conforming for residential use in the TCB District by virtue of the prior or owner's residential use of the property. The City's position is that the prior owner's residential use was long discontinued and abandoned under the City Code. And the parties agree that section 10.202, which is provided in the appendix at page 24, is titled discontinuance of use, is the applicable regulation. Subsection B states whenever a non-conforming use of a building or structure or part thereof has been discontinued for a period of 12 consecutive months or whenever there is evident a clear intent on the part of the owner to abandon the non-conforming use, such use shall not, after being discontinued or abandoned, be re-established. So turning to the record, which is the record show, record shows that the prior owner vacated the property in 2007, that the property remained vacant and unoccupied in excess of seven years until plaintiff took occupancy of the property, that the property was listed for sale in 2007 by the prior owner as an office tech building, not as a residential building, and that the prior owner took no steps to re-establish her residential occupancy of the property. So in terms of discontinuance, clearly there's evidence in the record, in fact there's a stipulation in the record at page 87, that shows the property had been discontinued for residential use in excess of 12 months. Additionally, there's evidence in the record that shows plaintiff, or I'm sorry, the prior owner abandoned residential use of the property. And again, going back to the standard on administrative review, the standard is, is there any evidence in the record to support the administrative decision? And clearly there is as to this legal non-conforming issue. Plaintiff next argued that the As we know, courts are reluctant to apply these principles against municipalities, and they only do so in compelling and extraordinary circumstances. We know that as to both equitable estoppel and latches, there's a reasonable reliance component and a substantial injustice component. So let's turn to the record. What the record establishes is that plaintiff is an attorney and he's a real estate agent doing business in the city. Plaintiff made independent determinations upon review of the city zoning regulations that the property retained its legal non-conforming residential status when he purchased the property in 2010, prior to interacting with any city agent. So he made this determination, this conclusion on his own. There was no reasonable reliance on the MLS. It's established in the record that the MLS listing and the property history report clearly indicated back in 2007 and all the way through the time plaintiff purchased the property, that the property was on the market for an office tech building. Additionally, the city's former community development director advised plaintiff in 2010 that the property likely lost its non-conforming status because the property had been vacant for three plus years. In fact, when we go to the record at page, first indulgence 525, there is a letter from the former community development director to plaintiff on August 11th, 2010, where the former community development director advised plaintiff, and this was before plaintiff made any improvement to the property, that the house might be considered a non-conforming use because it has not been occupied for more than a year and subject to the elimination of the non-conforming status per the current zoning ordinance. It appears that the B-4 allowable special uses can allow its reoccupancy as a property. In August 2010, plaintiff was on notice that a special use permit was required for use of this property. That is in the record. Again, under the standard for administrative review, there is ample evidence to show the equitable estoppel and matches does not apply. Finally, plaintiff asserted in the administrative hearing that a collateral estoppel precluded the city from enforcing its zoning regulations. Specifically, plaintiff argued that a prior administrative proceeding that was before the city's building board of review, excuse me, building board of appeals dedicated to resolving building code issues precluded the city's enforcement of its zoning code regulations in the second proceeding. We know that for collateral estoppel to apply, the issue in the first proceeding that was actually decided must be identical to the issue in the second proceeding. If we look at the decision of the building board of review, we see there, and that is in the record, what we see is the written decision makes no mention of the special use permit requirement. It does not pass on whether or not plaintiff was required to obtain a special use permit. Clearly, collateral estoppel does not apply in this matter. These were the issues that administrative proceeding. There is ample evidence in the record to support the administrative decision in this regard. We respectfully request this court affirm the administrative decision in its entirety. Thank you. Thank you. Justice Shasta, do you have questions? I do. You are indicating that the standard of review is what standard? The judge's position, the standard of review is clearly erroneous. This matter involves mixed issues of fact and law. Okay. Great. I misunderstood what you said. I agree with you. Let me ask you this. You hit on equitable estoppel. Why wouldn't equitable estoppel apply here when you have a man who received, I don't know, somewhere around 10 permits from 2010 to 2015 and he put into this building about $225,000 before he was told that he had to apply for a special use permit? My answer is really twofold. I first start again with the standard for administrative review. At this stage, we are not arguing which party's evidence carries more weight than the others. What the court is looking at, in my view, is whether there is any evidence in the record to support the administrative decision in this regard. As I noted previously, there is a reasonable reliance component to equitable estoppel. There is also a substantial injustice component to equitable estoppel. It is our view that a plaintiff could not have reasonably relied on either the building permits or any other representations of the city given, one, his own legal determination prior to any interaction with the city agent that the property retained a legal nonconforming status. Obviously, that was an errant conclusion. He is an attorney. How about Mr. Forrest's testimony when he continued to give him these marketed as a single family home? How do you get around the testimony of Mr. Forrest as well as other, like Kenneth Johnson, the alderman for 10 years, and the affidavit of the daughter? Doesn't that speak volumes and shouldn't it speak volumes to both the administrative hearing as well as to the trial court and the appellate court? What I would say is, in the record, and I understand your reference to the testimony, but also in the record is a communication from Mr. Forrest to a plaintiff on August 11, 2010, that is clearly putting plaintiff on notice back in 2010. Then why did he continue to give him a building permit under nonconforming use? Why did he not say at that time, hey, you can't have these based upon a nonconforming use. This is not a nonconforming use. Did he do that? Judge, the property could be used as a residential property, obviously with a special use permit. The property could also be used for commercial purposes. Correct. I understand that. I understand that, but how do we not rely on the testimony of Mr. Forrest, especially if we're looking at an equitable estoppel principle? Judge, what I would say is, again- As well as Mr. McKenna, the other, the alderman, Ken Johnson. Right. What I would say is, we recognize there is evidence in the record that is supportive of a plaintiff's position, but we also stress there is considerable evidence in record in support of the city's position. If we were making a closing argument before the hearing officer and the administrative proceeding, we'd be making these arguments about which evidence is more persuasive, which evidence carries more weight. But the consideration here isn't which carries more weight. It is, is there evidence in the record? There absolutely is, and we cite to it in our papers. Okay. I understand what you're saying. Let me ask you this. In the stipulation, there was an issue talking about the vacancy period that was stipulated to, but in the stipulation, there was an X or a star right next to it. What does that X or that star mean? Is it stipulated to because it wasn't crossed out? My understanding, judges, that was all stipulated to. And we also have in the record at page 104, a discussion between the attorneys and the hearing officer on those stipulations. And there wasn't anything in that discussion to indicate that particular stipulation was disregarded. Okay. Well, I guess I have a lot of questions, but if your position is that any of the questions I ask don't raise a clearly erroneous question, I mean, I'm still, I'm still looking at Toronto when he said that he continued to communicate, or I'm sorry, Mr. Forrest, where he said he continued to communicate with Toronto that the property can continue to be used as a single family home. He told him it was the interest of the city. In a letter, he copied the city manager, the attorney, the alderman, the mayor. Isn't that relevant even to a clearly erroneous standard? Judge, I think that's relevant if we're making closing arguments before the hearing officer and the administrative proceeding. But what is also true is earlier than all of that, plaintiff was put on notice by Mr. Forrest that the property required a special use permit and that it was being considered as, that residential use being considered as discontinued. That is also in the record. But also isn't it in the record that he wasn't told until 2018 when he went to get the 2010 in the record at page 525 that his residential use of the property in the B4 district at that time required a special use permit? Talk to me about the spirit of the code. Is that relevant at all? And I'm sorry, Your Honor, the spirit of the zoning provision? Yeah. Well, I mean, you know, if you take a look at the zoning provisions for the town center business district as a whole, take a look at that in their entirety, clearly they're aimed at encouraging commercial business use of property in the city in that district. That is in a major commercial thoroughfare of the city. Obviously, because residential use has been made a special use in that district, it's not encouraged. That said, it's also not prohibited. That's something, obviously, that the city would want some control over. And they could allow it. They could put conditions on that use that could require that use as opposed to running with the land. They could require that use cease per change in ownership. So, yeah, I think the spirit of the zoning provisions in that district clearly disfavor residential use of property. Yeah, because at the point that the windows were going in at 2018, he already made most of the repairs in that home, didn't he? Yeah, and what I'll say, Judge, is that he was required to bring the property up to code. It's undisputed that the property was in very poor condition such that with the previous owner, the city was required to post it no occupancy. It just simply was unfit for any human occupancy based on the condition. So, it was going to require improvements whether it was used for residential purposes or whether it was used for commercial purposes. It needed to meet the minimum standards of the code. Okay. You rely on Morgan Place, and I think both you and the plaintiff rely on this. I think it was our case, the K-5 construction case, basically indicating that the plaintiff knew basically, well, in Morgan Place, that the plaintiff knew the status of the property. How do you have to prove that? We can't infer it, nor could the administrative agency. Right. So, in Morgan Place, what the court determined was that the architect for the property owner knew or should have known the requirements of the city code concerning the property. There was some proof that he did know and kind of ignored it, wasn't there? Correct, and there's proof of that in this case. How do we infer just because Mr. Trotto was a lawyer that he should have known all of it? We don't have to infer, Your Honor. It's in the record. Mr. Trotto testified that he was aware of the city code regulations. He conducted his own independent review of those regulations. He was aware of, obviously, the prior owner's use. He purchased the property from the prior owner. That is all in the record. He was aware of these things. And, Judge, I'll say as to K-5, K-5 is an equitable estoppel case, but again, the posture of K-5 is different than the posture of this case. In K-5, this went to trial court on the county's zoning code violation, and that was raised in the course of the equitable estoppel issue. It was raised in the course of the trial, and the trial court determined that equitable estoppel did apply, and then that was affirmed by the appellate court. Here, we have the inverse. We have the hearing officer, obviously, finding plaintiff liable for the violation. Again, there's evidence in the record that counsels against the application of equitable estoppel and matches, and under the standard for administrative review, there's evidence in the record that a decision should be affirmed. Let's talk about the fees quickly. You indicate that he forfeited the argument of fees because he didn't raise them in the initial complaint. How does the litigant know they're going to win in order to raise fees in a complaint? So what the statute, my reading of the statute, Your Honor, is that fees are only available upon a finding by the court on administrative review that the administrative decision is or was arbitrary and capricious. We know that Illinois courts follow the American rule, and if there are attorney's fees available by statute, those statutes are forfeited. So what the litigant did find out was she made no finding when this case was argued on administrative review that the decision was arbitrary and capricious. She did find it was her view that the decision was clearly erroneous, but she made no finding about it being arbitrary and capricious. And we know that the arbitrary and capricious standard is its own independent standard, just as we have the standard for clearly erroneous decisions, just as we have the standard for decisions that are against the manifest way of the evidence. So that was never argued before the trial court, and Judge Wheaton pointed that out. Judge Wheaton never made a finding in that regard, and therefore fees simply are not available under the statute. But beyond that, Your Honor, the fees are permissive in the statute. In other words, even if Judge Wheaton had made a finding that the decision was arbitrary and capricious, she still was not obligated to issue fees. And of course, in arguing the fee motion, Judge Wheaton explained that the decision was not arbitrary and capricious, that she stood by her views. If we would find equitable estoppel, would that affect the fee claim at all? Absolutely not, Your Honor. Absolutely not. I have no further questions. Thank you so much. Thank you. Justice Hudson. Yes, I do have a few questions. Thank you, Justice Inhofe. Good afternoon, Mr. Conway. Good afternoon. On the point that, Justice, you alluded to earlier in the course of the argument, and Justice Chastok followed up on, during the course of the negotiations with Mr. Trotto, I believe there were multiple building permits that were issued to him, and at some course, at some point in the course of these negotiations and permits, you said that a notice was sent out to him telling him that he may need to apply for special use, that he may not be in conformity with the ordinance. Is that correct? Yes, Your Honor. In fact, that occurred very early on, almost months after Mr. Trotto purchased the property. And yet, Mr. Trotto continued to apply for and receive building permits, correct? Correct, which he could receive a building permit to improve the property, bring it up to the minimum health and safety standards, because the property could be used as a residential property with a special use permit. So there was no prohibition from issuing building permits for Mr. Trotto to improve the property. It could be used for allowable purposes. But I guess my specific question is, in the course of all these permits, all of these negotiations, did anyone on behalf of the city ever send him a letter or a notice stating that he lost the right to occupy the property as a legal non-conforming use? Did anyone ever give him that notice? Judge, what the city did back in August 2010, and it was a correspondence from Mr. Forrest to Mr. Trotto, was put him on notice that the property in the B4 district, which is now the And that was from the very beginning. Let's assume that is true. Did anyone ever tell him that he had lost the right to occupy the premises as a legal non-conforming use, and he had to then apply for special use? Did anyone tell him that specifically? No, and they were not required to do that. I understand. Did they tell him that? No, Your Honor. Okay. All right. As you probably know, the case law and the statute, the local ordinance that you have speaks in terms of the building being discontinued for a period of 12 months, etc. And under the Douglas case, the Illinois Supreme Court held that the term discontinued within a zoning ordinance requires more than a mere suspension of a non-conforming use. It's essentially equivalent to an abandonment of the use. The court speaks in terms of abandoning the right to use the property. You're aware of that case? Yes, Your Honor. So my question is, what specific evidence in the record is there that clearly establishes that either Mrs. Lebowski or Mr. Trotto intended clearly to abandon the property? So, Your Honor, the property is unconstituted. The property was vacated in 2007. The former owner listed the property for sale not as a residential property, but as a commercial property, an office tech property. That was on the MLS. Mr. Trotto is as an agent and has access to the MLS. He is the one who submitted the MLS listing that showed it as an office tech building. Mrs. Lebowski took no steps to reestablish her residential occupancy of the property. Let me stop you right there. It's my understanding clearly from the evidence, and tell me if I've missed something. Mrs. Lebowski, although she was given notice, continued to stay there during the day, slept somewhere else at night, put in a hot water heater, and had made some improvements to the property. Is that true? Yes, that's the testimony, Your Honor. And what I would say is that's at odds with both the representations of Mr. Forrest in 2010, the December letter and the August letter, and it's at odds with the party's stipulations that the property remained vacant and unoccupied in excess of 12 months. Let me follow up on that. Is it your position that vacancy alone establishes a discontinuation or an intent to abandon? Is that your legal position? No, Your Honor. And that would be because of the Hammond case, correct? Correct. All right, so the stipulation of vacancy, is that the equivalent legally of abandonment? No, Your Honor, but as I mentioned, there are several other factors, including the fact that the property was listed as an office building, not as a residential building, and the fact that prior owner did not take any steps to reestablish reoccupancy, including fixing the property up for that purpose. What do you make of Mr. Zabosky? And I believe you're probably not going to dispute this. Wasn't she continuing to stay there during the day? Judge, that's the testimony of one witness. We also have letters from John Forrest that, in my opinion, contradict that testimony. We have the stipulation that the building was vacant and unoccupied in excess of 12 months, which, in my view, contradicts that testimony. And again, we're here on administrative review. We're not reweighing the evidence. What we're doing is we're trying to confirm whether there is any evidence in the record that supports the administrative decision. I understand your position. Thank you, Mr. Conway. Thank you. Are those all your questions, Judge Hudson? Yes, thank you, Justice Eno. All right. I just have one. Most of all the rest have been asked. Mr. Conway, there's been some discussion of a letter sent by the city, a couple different dates. The one I'm thinking of is December 2010. Didn't that letter indicate that the city was not pursuing a course of action, that the nonconforming status of that building had expired? Judge, this letter is admittedly vague on that issue. I think you can make an argument that it legal nonconforming property, that a special use permit is required. If we could do this all again, I'd have this letter be more clear. But what I will say is there is clear evidence in the record to support the administrative decision in this regard. And I'm not arguing there isn't evidence contesting that. I'm not arguing. What I'm saying is there's evidence for the city's position and there's evidence against the city's position. Hearing officer, make the call. Right. It's clear. All right. No, no. That's fine. Thank you. All right. Thank you. Those are all our questions at this time of Mr. Conway for this part of the argument. So we'll turn to you, Mr. Weiler. You have 15 minutes uninterrupted to discuss both cases. Okay. Thank you, Your Honor. May it please the court, counsel. This issue begins with the construction of this property in 1950 in which it was constructed lawfully as a residential use. The only reason that we are having this conversation is that there was a change in the ordinance which then conferred on to this property a zoning of the city center commercial, but also conferred on this property a legal nonconforming use. When Mr. Trotto made his due diligence inquiries into this property, he was specifically told, and it's unrebutted that he was specifically told that the records of the city showed that this property was residential. The city had taken no action whatsoever to change that, had made no indication that there was any facts that would actually invalidate that special use. What the city told Mr. Trotto was exactly this, and I'll quote from the letter. The city could make the argument that these two structures have been vacant for three plus years, any nonconforming status they enjoyed has now expired. It is not the intention of this department to pursue this course of action at this time as restoration of these structures and reoccupancy seems more advantage not only to the city, but to you as the owner. Not only did the city indicate that letter says we have taken no action to change the status of this property from its nonconforming use. We could, but we're determining that we will not do that and that it's to the city's advantage. The evidence was clear and unrebutted that from the city's perspective, the city's perspective, every witness from the city who understood and looked at and observed the facts made the determination that Zaki Zabrowski had never abandoned this use, that she was involuntarily displaced from the property, but that from the minute she was to that use and that she had not abandoned or forfeited. That all of the evidence and all of the testimony was that based upon what we saw Zaki do, that the evidence or that the use was never abandoned. That it was the policy of the city that was correctly applied to these there would be no action taken to invalidate that nonconforming use. Mr. Trotto was given this letter and this letter not only says that they're not going to take action to affect the nonconforming use, but it then went on to discuss how the residential section of the property, there were two properties that were involved in that letter, the two neighboring properties, one which was a residence and one which was a commercial. That letter continued to indicate what policies applied to the residence and what applied to the 134 building as well. So that letter cannot be read as being vague and it's interesting that the city now says, well, this city that this letter clearly says that we're going to disavow the nonconforming use, but then also says, well, it's sort of vague. So it can't have it both ways and we believe that based upon the evidence that there's no issue with respect to the forfeiture of this nonconforming use. Even if there was, the statute, the article 2, 10.202B3, which council indicated was the basis of their determination that Mr. Trotto was in violation, was in fact pursuant to 10.201E, not applicable to residential uses. So that whole argument is non-starter from a clear reading of the city's own ordinances. So Mr. Trotto does his due diligence with regard to what is the zoning of this property to begin with. The documents that he gets from the city indicate that it's residential. He observes Zaki making efforts to continue that use. No one ever told him in that due diligence process that this nonconforming use, that any action had been taken. If they were going to take that action, it shouldn't have waited eight years to do that. The first time that it made any indication that Mr. Trotto's occupancy of this property was in any way unlawful was eight years later. It was in 2018 when they said, by the way, you can't occupy this without a special use permit. And that was based upon a determination of the building code administrator that said that after 10 previous determinations to the contrary, that, oh, by the way, you need a special use. That was the first time that that was ever done. And so if they are going to do that, they cannot fail in the diligence in bringing that action. They cannot create a delay that prejudice the defendant and that they cannot have government officials taking affirmative actions that induces the property owner to take those actions. Those are all of the determinations. Those are all of the elements of latches, which clearly applies to this situation. Additionally, the agenda and the statement of what was before the Board of Building Code Review was that this very issue that he needs a special use because the nonconforming use had previously been abandoned. That determination was made to be to not be sustained by the Board of Review. That the building code enforcement officers determination to that effect, which was contrary to all of the previous determinations that have been made, the Board of Review said that is not correct. You should have issued this permit and we are ordering you to do so. No appeal was taken of that. So then to come back in the face of its own tribunal, which the ordinances say, this is what you do. The building code administrator makes a determination. And for all of the determinations, whether Forrest or Christie, that they are the ones that make a determination as to whether or not the improvements made pursuant to a permit conform to its use. And they are the people that are to be making the Forrest indicated that the use was residential. Christie, eight years later, says, well, maybe not. The Board of Review says it's residential. Issue the permit. And to now, eight years later, to indicate that violates both res judicata, there's identity of the issues, there's identity of the parties. There was a final adjudication, which was not appealed. And both res judicata and latches should apply to prevent the city from going against its own determination in its own body to say that despite that, we are going to now accuse you of violating our zoning ordinances. So we start with the proposition that the records, when Mr. Trotto first saw the first indicated interest in this property, that it was residential, that there was no action taken, that we have Article 10-2E, which exempts this property from the application of the principles that the city is now trying to apply against him. And then we have the estoppel. There could not be a more textbook example of estoppel. You have the city manager or the city individual who is specifically, he held the position of community development director, which the statute specifically says makes him the building code administrator. The building code administrator makes the decisions as to whether or not a building permit is seeking improvements that are in conformance with its use, with its lawful use. This individual did this nine separate times. And this isn't a situation in which the city says, well, you could have made those improvements to use it commercially. No, these improvements were bedrooms. They were bathrooms. They were showers. They were washing machines. All of those things. Yes. Excuse me. This is Justice Zenoff. I'm sorry to interrupt. It's a little bit early, but this is your time to address your second appeal, 2-200221. So you have all of five minutes left on the uninterrupted time. So if you'd like to turn that, then we'll have the opportunity to ask you questions on both. Thank you. And I was just getting to that and I was trying to reserve exactly five minutes and thank you for that notice. So we think that this is not clearly erroneous. And the standard here isn't whether or not there is any evidence to support it. The standard of review to sustain the court below was clearly as erroneous. And that is whether the administrative decision upon review is that the reviewing court is left with the definite clear conviction that a mistake has been made. And a mistake has been made. And not only is that clearly erroneous, but it is also arbitrary and capricious. The statute which authorizes fees is couched in an if and then circumstances. I cannot on behalf of my client undertake a standard of review that is more rigorous than the standard of review that he is required to make in the administrative review, which is clearly erroneous. Once it is determined that a clear error has been made, which the court indicated had been made on each and every affirmative defense that was raised, it then makes the determination that's a separate claim that can be made at any time while the court retains jurisdiction. I believe that the F.H. Prince cases, the Gaynor case, the Rodriguez v. Department of Professional Regulation case all indicate that that request for fees can be made either with the claim or shortly after a regulation in the case of the administrative cases after the determination has been made that they were invalidated. This is the same situation here. This claim was made within 30 days of the court's determination that the administrative review should be, that on administrative review that the administrative judgment should be reversed. The question then becomes, and this was timely made, and then the question becomes as to whether or not this is arbitrary and capricious. It's well settled that a decision is arbitrary and capricious if it's so implausible that it cannot be ascribed to a disference of view that relies on fact that the legislature did not intend to be considered or entirely fails to consider important aspects of the problem or offers an explanation which runs contrary to the evidence in the record. The evidence in the record was completely unrebutted, and for this administrative law judge to look at this and to apply the law in a way that he did could not possibly be anything but arbitrary and capricious. With regard to counsel's comment that attorney's fees are discretionary, attorney's fees are always discretionary or are often discretionary. As we had indicated in our brief, we alluded to the most fertile ground for attorney's fees litigation is in the clearly that statute is clearly couched in terms of discretionary language. However, the court does have an obligation to make that call within the course of the manifest weight of the evidence, and the manifest weight of the evidence shows that this is arbitrary and addressed this issue because it was determined to be waived, we believe was correct, and the finding when there were no findings of the administrative agency. There was no explanation with regard to what the basis of that determination was, and it's clear that the administrative agency did not consider that evidence in this terse ruling that says, well, he's just liable. We think that there are important equitable principles here that were completely ignored, and the court below recognized that to be the case, and for the city to in the face of its own agency's determination that there was no basis upon which to require Mr. Trotto to apply for a special use, to then walk right through that determination and to say, Mr. Trotto, we're going to put you through another ordeal about the property after giving you a total of $270,000. We're going to put you through yet another ordeal with regard to that. Counsel, your time is up at this point. You will have an opportunity to respond to questions. Thank you, counsel. Justice Shostak, do you have questions? I do. I think where you left off is we put him through this ordeal of spending all this other money. Your opponent indicates he would have had to spend that money anyway in order to get the place up to code. What do you say about that? I mean, it's true, isn't it? You had to do something. Did you do anything any differently for a residential than you would have done for a business? Of course. The evidence shows that the building permits required – they showed the plans that he was making bedrooms, that he was going to put in a washer and a dryer, that he was going to put in a gray box for a washer and dryer, that he was going to make those improvements. Counsel indicated without any evidence that this property was not up to code. There's no indication in the record that that was the case. There was a case that there was a water still owned the property, that she replaced that water heater, and that the property had significant overburden of property within it. There's no indication that anything else was not according to code. It didn't take a building permit to empty this property of excess property. And there isn't any indication that at the time these building permits were issued, that that property had not been removed. So to say that, well, these permits were really issued to fix building code violations, that's not the case. And if there was, the only indication would be that the water service had to be separated from the commercial property, which it had joined, in order for it to be used as a residence. So the permit that was issued with respect to that, that wasn't in violation. It only would be in violation if the property were going to be used as a residence. And the permit was issued specifically to allow him to hook up to a new water source. So I would say that this idea that he was only bringing his property into conformance, that's a red herring. I think it's disingenuous on the part of the city. Okay, thank you. You did stipulate then with respect to the period of vacancy of that property, correct? Your Honor, I have to admit that that was an oversight on my part. If you look at the stipulation, there are other places where I had lined out any reference to the vacancy being more than 12 months. And it was an oversight on my part that the other time that that was mentioned was not. But the record is the record. And I think that asterisk was made by the city clerk and given to the hearing officer to call us back after that issue was raised. I think the city clerk recognized that. Those are the facts. And I don't want to get outside of the record. But even so, it's not a matter of vacancy. It's a matter of she was involuntarily disposed of her property. She was involuntarily taken out of her property. So in order to get back in, she had to do all of the things that she actually did. And it was involuntary. And it was clear. The evidence showed that it was not an abandonment. And so the vacancy and the period of vacancy, according to the cases that Justice Hudson had referred to, is not what's at issue. Is that the dislocation has to be consistent with abandonment. And there was no abandonment here. So then you feel you didn't need to give notice under 10-202-E because there was no discontinued Yes. And so if there was no discontinuance, and she was never told that she couldn't re-enter. The issues that the posting said, you can go back in when this work is done. So it was intended even by the city that she would go back in. Why would the city have to notice that she intended to use it when there was no indication that she couldn't? So I don't believe, and the city didn't raise that incidentally in its proofs, and had the burden of going forward and making that claim. Interesting. Both of you rely on K-5 construction. Some of that can really work against you, indicating that you should have been aware as a lawyer, basically, the status of this property of your client. How do you respond to that? And how do you rely on K-5 construction? I rely on K-5 for the specific provisions that where there has been an authorized agent of the municipality issuing a permit, and that you make significant improvements or significantly change your position and reliance on that, that estoppel will apply. However, with regard, and that's the notice, Mr. Trotto is an attorney. He did what an attorney should do. He made a Freedom of Information Act request that says, tell us what the zoning of this property is. He went all the way back to the planning of this property. He charted its use. He made personal observations about its use. And then before he did anything to the property, he was given a letter that said, and Mr. Forrest indicated that it was unambiguous in his communication with Mr. Trotto that this property was going to be used residentially. So under the facts, the fact that he's an attorney, I think, militates in his favor because he was extra careful with regard to his review of this that even if we change our ordinance, the property will remain residential as a legal nonconforming use. And he has all of these determinations that are made by this agent saying, yes, go ahead and make these improvements. And each and every one of them, according to Forrest, was made with the determination that the use of this property was legal nonconforming residential. So I don't think that, and I think it's wishful thinking for the city eight years later to come and try to now create a, to use that December letter, which Forrest indicated was intended to communicate that this could be used as a residence and now say that it means something else and now claim that it's at least ambiguous. So I think that whole issue is a red herring in this context. And I think Mr. Trotto did appropriate due diligence as an attorney and as a realtor with regard to his knowledge of this property and the decisions that he made based upon the conduct of the authorized actions of the city. Okay. Thank you. One final question. If we find that there is equitable estoppel here, how will this affect your fee claim? Will it affect it at all? Well, Judge, the fee claim is based upon whether or not the determination of the administrative agency was arbitrary and capricious. And in the face of all that evidence, Judge, which is all in the face of all of that evidence, particularly to, you know, particularly with the estoppel argument, for him to just tersely say, hey, you're in violation without any kind of finding is still arbitrary and capricious. And it's the decision of the hearing officer or the administrative law judge that is reviewed in connection with whether or not his decision was arbitrary and capricious. And even if you determine that estoppel does apply, all of the other matters apply. Laches applies. Res judicata applies. All of those equitable remedies should have been recognized by the administrative law judge who is also an attorney and should also be aware of the equitable principles that apply to a case of this nature. Thank you. I have no further questions. Thank you, Your Honor. Justice Hudson. Good afternoon, Mr. Weiler. Good afternoon, Your Honor. My question relates to the motion for attorney's fees and whether or not it was an abuse of discretion in denying those fees. There was some conflicting evidence as to whether Lebowski had vacated the residence after it was cited for the code violations in 2007. But as you know, the city cited Cohen. The Cohen case in support of its argument that the legal non-conforming use had been discontinued. In Cohen, the court held that the vacancy, even if involuntary, operated as a forfeiture of the legal non-conforming use. So my question is, in light of that, the hearing officer's determination that the residence was vacant for a sufficient period of time, why would that be so implausible as to be arbitrary and capricious? Judge, I believe that the Cohen case, it was, it was, I thought it was in Cohen that it was determined that the use was voluntarily abandoned. But assuming that there was some conflicting evidence on that, why would the denial then be arbitrary and capricious? Well, Judge, the, I don't believe that the evidence was conflicting. There were, there were four witnesses who testified. So there was Trottle, Horace, Johnson, and the, the Alderman, Mayor Johnson and the Alderman. All four of them indicated that they saw constant efforts on behalf of Zaki to restore herself to residency in that, in that unit. And that the, and that there was no conflicting evidence with regard to that. The only other evidence, the only witness called by the city said, I have nothing. I can't tell you more than one day that she was not, that she was not in residence. Didn't know anything about what Zaki had done. Didn't know anything about what was going on with the property prior to her hiring, being hired by the city, which occurred six months prior to this hearing. So the court in looking at that, there was, there was no conflicting evidence on that. Now there might be some conflicting, you know, the, the, the city may have some, some views on that, but there was no evidence to, to rebut what the policy of the city was and how the policy was administered and what the facts were with regard to that policy. So, you know, I think that it was arbitrary and capricious for the, for the court to just, for the administrative law judge just to say, well, you're, you're liable, Mr. Petrato. All right. Thank you, Mr. Warren. That's all I have. Thanks. This is Justice Enoff. I do not have any questions. Thank you very much, counsel. At this time, Mr. Conway, you may give your rebuttal. Thank you, your honor. You know, the big picture here and at risk of sounding like a broken record is, you know, you, you've heard our argument in, in, in our points to the record in terms of the evidence that supports the city's position. You've heard from plaintiff's counsel and points in the record that he argues supports plaintiff's position. And again, that's fine when you're at the administrative agency level and you're making your arguments in a closing argument and you're arguing which, which points of evidence should carry more weight. And, you know, much of what I heard from, from counsel was that these points of evidence should outweigh points of evidence that, that, you know, we've highlighted for the no evidence in the record supporting the administrative decision in regard to the legal nonconforming issue, in regard to the equitable estoppel and latches issue, in regard to the collateral estoppel issue. That's the argument that needs to be made, not that the evidence relied on by, by plaintiff is more persuasive or carries more weight, because we know that this court does not reweigh the evidence. This court does not substitute its judgment for that of the hearing officer. This court could even be sitting here today thinking, well, you know, I think the arguments made by plaintiff are, are reasonable. And if I was the hearing officer, maybe I would rule a different way. But that's not the court's function on whether there's evidence in the record to support the agency decision. And there's good reason for that. It's the hearing officer that's hearing this evidence as it's coming in. It's the hearing officer looking at the documents, hearing the testimony, and judging credibility of witnesses. So this court's function is, is simply to confirm, is there evidence in the record? We've pointed it to the court in our, in our papers. And, and I think that's, that's the big picture here. I just want to touch on a couple of the points that were made in plaintiff's argument. There was an emphasis on inaction of the city, the city not taking action in, in telling plaintiff that the property was legal nonconforming. We know from the Patrick engineering case, and we know from the city of Wheaton case, that inaction is not enough to sustain equitable estoppel against the municipality. So if, if plaintiff's argument is based on this theory that the city needed to do more, that's simply not supported by Patrick engineering and the city of Wheaton. In terms of the building board of reviews decision, again, that decision had to do with a permit for the installation of windows. There is nothing, no language in that decision addressing whether or not plaintiff was required to obtain a special use permit. In terms of the issue on requests for fees, I believe council argued that he could not argue before the trial court that the decision was arbitrary and capricious prior to the court issuing its final judgment ruling. That is not the case. This court, recently in the comprehensive analysis of how administrative decisions can be reversed. They could be one against the manifest way of the evidence. They could be two clearly erroneous, or they could be three arbitrary and capricious. Each, each standard is a basis for reversal of, of an judgment. Plaintiff did not and waited until post judgment motion for attorney fees. Judge Wheaton recognized that that argument was never raised. It was forfeited. But in any event, she determined that the decision was not arbitrary and capricious. I believe Justice Shostak asked a question about spending money to get the property up to code. Absolutely. That's in, that is in the record. And additionally, plaintiff could make improvements to that property without occupying it that are residential in nature. He could have been doing that all along. And then he goes and gets a special use permit for the residential use. So long as he's not occupying it, which he was not during the time he was making the improvements, there is absolutely no prohibition from the city issuing building permits for that purpose. He was not occupying the property. I believe counsel mentioned something about a oversight and stipulation. A stipulation is a stipulation. If he had made an oversight that should have been brought to the attention of the hearing officer at that time, not here on oral argument. It's first time I'm hearing of it. In terms of the K-5 case, yes, we're both relying on this case. I think K-5 is a prime example of the type of situation which would result in a substantial injustice because the asphalt plant operator had nowhere else to go. His use was completely prohibited. That is not the case with Planta's property. Certainly, he can use the property for commercial purposes, any of the commercial purposes that are allowed in the TTV district. And additionally, he can use it for residential purposes. He just needs to go apply for a special use permit. So, for all these reasons, your honor, again, the city has pointed to court, to evidence in the record that supports the administrative decision. Plaintiffs needed to argue that there is no evidence in the record. Instead, what we heard was more akin to a closing argument. For all of these reasons, your honor, we request that you affirm the administrative decision in its entirety. And additionally, you affirm the decision of the trial court to deny plaintiff's motions for attorney's fees. Thank you. Thank you. I have no further questions. Justice Hudson. I have no further questions. All right. I do have one question, counsel. You said all he had to do was apply for a special use permit, but that special use permit could have been denied, could it not? Yes, your honor, but that's entirely speculative. It could be granted. As long as Planta meets the criteria for the special use permit, that can be issued to Planta. Mm-hmm. Okay. Thank you. Thank you for your argument, counsel. And then, Mr. Weiler, you have up to five minutes to give us a rebuttal with respect to anything further on the attorney fee issue. That is, your case 221. Yes. So, what counsel is suggesting is that any time that an administrative decision is rendered on behalf of any individual, and there are any facts whatsoever that may support that, that automatically the court has no authority to reverse that or to review it further. That's not the case here. This is a clearly erroneous standard of review, which both parties have agreed applies here. And it is because there's a mixed question of law and the facts show that none of the facts are in accord with the city's assessment that Mr. Trotto was in violation of the city's code. The res judicata applied, as did the, as does Lachie's. And Lachie's applies where, Lachie's does not apply where someone occupies a property in complete violation and has done something in complete violation of a city code. This isn't the case here. This is where the city changed its mind. Counsel, I interrupt you because you've had an opportunity to do rebuttal with those issues. This rebuttal is not an extra one. It's one that should be pointed towards the attorney fee issues that is in 021. If you can confine your remarks to that, please. That's correct. And I would indicate that the facts of this case are completely unrebutted. That the suggestion that because, the facts really that the city wants to hang its head on is number one, that Mr. Trotto was an attorney. Mr. Trotto was an attorney and he did what an attorney should do and he did a proper due diligence and got information upon which he was entitled to rely. Those facts don't change. The fact that he's an attorney doesn't change the fact that he was entitled to this use. And to find otherwise was completely arbitrary and capricious. The other issue is I think they said it was on the basis of this letter that he should have had notice. That letter at best, according to their argument, was ambiguous. But at worst, he said specifically what it did say is that we have made no determination to date that this special use or that this non-conforming use has expired. We have not made that determination and we are not going to. And in the face of that, for the court below or for the administrative law judge to say you're still liable for a violation is arbitrary and capricious. For the court to look at what the specific issue was before the board of building code review, the building code board of review, that was specifically cited to the board by the city, by the city's attorneys that said this is the issue before you is that he's applied for this the windows were going to be too big or too small or the wrong materials. But because the non-conforming use had expired and he now needs a special use permit, the board of review said that is not the case. Give him his permit. Which was clearly intended for him to continue to use this pursuant to the property status as a non-conforming residential use. And for the hearing officer to completely ignore that fact and to permit the city to walk past that determination and say that this is a violation was clearly arbitrary and capricious. That is the same for as a residential property from the application of the article upon which the city says that the use had been abandoned. So for all those reasons, I think we should be reversed on fees. Thank you. Okay, good. Thank you very much. At this time, Justice Hudson, do you have questions? I do not. Thank you. Justice Hudson? I do not. I do not have any further questions. At this time, I would like to take the opportunity to thank both counsel for their arguments this afternoon. The court will take the matter under advisement and render a decision in due course. So again, thank you very much, counsel, for your participation in the oral argument this afternoon. Have a good afternoon. Thank you, Your Honor. You as well.